Billy Dan **JOHNSON**, Appellant,

v.

The **STATE** of Texas, State.

No. 2–88–158–CR.

Court of Appeals of Texas, Fort Worth.

Dec. 29, 1989.

Rehearing Denied Feb. 6, 1990.

John H. Morris, Gainesville, for appellant.

Phil L. Adams, Dist. Atty., Gainesville, for State.

Before JOE SPURLOCK, II, KELTNER and MEYERS, JJ.

## OPINION

KELTNER, Justice.

A jury convicted Billy Dan Johnson (appellant) of the offense of misapplication of fiduciary property, under TEX.PENAL CODE ANN. sec. 32.45(b) (Vernon 1974). The trial court then sentenced Johnson to seven years in the Texas Department of Corrections.

The issue presented to us on appeal is whether the evidence presented in the trial court is sufficient to support his conviction. After examining the record before us, we hold that the evidence is insufficient to support Johnson's conviction for the offense of misapplication of fiduciary property. Accordingly, the judgment of the trial court is reversed.

In his second point of error, Johnson argues the trial court erred in denying his motion for directed verdict because the evidence did not prove all the necessary elements of the allegations in the indictment. Johnson was indicted under TEX.PENAL CODE ANN. sec. 32.45(b) (Vernon 1974), pertaining to the misapplication of fiduciary property. Section 32.45 provides in part:

(a) For purposes of this section:

(1) "Fiduciary" includes:

(A) trustee, guardian, administrator, executor, conservator, and receiver;

(B) any other person acting in a fiduciary capacity, but not a commercial bailee; and

(C) an officer, manager, employee, or agent carrying on fiduciary functions on behalf of a fiduciary.

(2) "Misapply" means deal with property contrary to:

(A) an agreement under which the fiduciary holds the property; or

(B) a law prescribing the custody or disposition of the property.

(b) A person commits an offense if he intentionally, knowingly, or recklessly misapplies property he holds as a fiduciary or property of a financial institution in a manner that involves substantial risk of loss to the owner of the property or to a person for whose benefit the property is held.

In reviewing the sufficiency of the evidence in either a direct or circumstantial evidence case, we must view the evidence in the light most favorable to the prosecution and consider whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. State,* 672 S.W.2d 801, 803 (Tex.Crim.App.1984); *Houston v. State,* 663 S.W.2d 455, 456 (Tex.Crim.App. 1984) (opinion on reh'g); *Wilson v. State,* 654 S.W.2d 465, 471–72 (Tex.Crim.App. 1983) (opinion on reh'g). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979). However, a conviction based on circumstantial evidence cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of the guilt of the defendant. *Johnson v. State,* 673 S.W.2d 190, 195 (Tex.Crim.App.1984); *Jackson,* 672 S.W.2d at 803.

The entire body of evidence in each case must be reviewed "to determine whether the State has proven beyond a reasonable doubt each and every element of the alleged crime and not just a plausible explanation of the crime." *Butler v. State,* 769 S.W.2d 234, 239 (Tex.Crim.App.1989). Thus, we must now examine the evidence before us to ascertain whether the State proved, beyond a reasonable doubt, Johnson misappropriated fiduciary property under section 32.45.

W.P. Brock purchased a lot at Lake Kiowa in Cooke County, Texas. He testified he entered into a contract with Johnson to build a residence on this lot for $83,000. The contract gave the specifications for the home and provided that changes or additions could be made for an additional price. Brock did make some changes and additions which increased the

contract price to $87,950. Before construction began, Brock gave Johnson a note for $100,000 and a deed of trust against the property, apparently to secure Johnson against his expected expenditures in building the house. The deed of trust recites that Johnson would provide all labor and materials to complete the construction of a two-bedroom, two and one-half bath, brick veneer home in accordance with the specifications of the contract. The deed also provides Johnson would deliver the premises, fully completed, to Brock within 180 days from August 14, 1986, "free and clear of all liens, claims and encumbrances of any kind arising from or growing out of the construction...."

The contract called for Brock to make periodic payments to Johnson with the final payment at the closing on Brock's home mortgage. Brock made payments in conformance with the agreement by making three payments of $20,750 to Johnson. Brock testified Johnson approached him on December 1st, and stated he needed additional funds. Brock gave him a check for $10,000. These four checks were introduced into evidence and demonstrate that Brock paid Johnson a total of $72,250.

The house was basically finished in late December, and Brock moved into the residence. Shortly after the first of the year, Brock and Johnson agreed on payments due for other "extras" over the contract price. They agreed Brock still owed $15,388.

However, during the month of January 1987, Brock received notices that mechanics and materialmens liens had been placed against the residence. The State introduced eleven subcontractors' liens into evidence totaling approximately $33,000. Even with the $15,388 that Brock still owed Johnson, Brock was faced with approximately $18,000 needed to clear title to his house.

Brock testified he had no knowledge of what Johnson had done with the $72,250 that had been paid. Additionally, he testified he did not know the actual cost of construction of the house.

The court charged the jury separately on each of Brock's checks, and instructed the jury to aggregate the amounts misapplied from all checks. The charge on each check instructed the jury to find Johnson guilty if it found from the evidence, beyond a reasonable doubt, that Johnson:

did ... intentionally or knowingly misapply property by dealing with property contrary to an agreement under which the said BILLY DAN JOHNSON held such property ... to-wit: current money of the United States of the value of two hundred dollars ($200.00) or more but less than ten thousand dollars ($10,-000.00), the said BILLY DAN JOHNSON held as a fiduciary, to-wit: as a trustee, in a manner that involved substantial risk of loss to W.P. Brock, the owner of said property, by then and there retaining, using, disbursing, or otherwise diverting said property without first fully paying all obligations incurred by the said BILLY DAN JOHNSON in the building, constructing or completing of a dwelling upon Lot 1740, Lake Kiowa, Cooke County, Texas....

It is clear from the indictment and the charge to the jury that the State was required to show Johnson had retained, used, disbursed or otherwise diverted the money Brock paid him without first fully paying all obligations incurred in construction of the house. The introduction of the material liens demonstrate that Johnson did not fully pay all obligations incurred in the construction of the house.

However, the State offered no evidence to demonstrate the cost of construction or that the money was improperly retained, used, disbursed or diverted in a manner inconsistent with the contract. Specifically, the evidence did not contradict a reasonable hypothesis that Johnson used all the money to pay construction expenses, but the house simply cost more than the contract price.

The State relies on *Little v. State*, arguing that the State is not required to prove how Johnson applied the funds. *Little v. State*, 699 S.W.2d 316 (Tex.App.—San Antonio 1985, no pet.). In *Little*, the defen-

dant secured a bank loan with certain accounts receivable. He agreed that he would pay the proceeds of the accounts receivable upon collection. Instead, after Little received payment for these accounts, he did not turn the money over to the bank. The San Antonio Court of Appeals held it was unnecessary for the State to prove what he did with the money, only that he had not paid it to the bank when it was received. *Id.* at 318.

While we agree that the State is not required to prove how Johnson spent the money, it was required to prove the money was not used in compliance with the contract. As a result, the State failed to carry its burden because the evidence is insufficient to support the jury's answers.

We must reverse and remand to the trial court for entry of a judgment of acquittal.